**UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF MISSOURI**
**EASTERN DIVISION**

| | |
|---|---|
| **BRYAN REDDICK,** individually and on behalf of all others similarly situated, | Case No.: _____ |
| Plaintiff, | |
| v. | **CLASS ACTION COMPLAINT** |
| **WIESE USA, INC.,** | |
| Defendant. | **JURY TRIAL DEMANDED** |

## CLASS ACTION COMPLAINT

Plaintiff, Bryan Reddick ("Plaintiff"), individually and on behalf of all others similarly situated, by and through his undersigned counsel, brings this Class Action Complaint against Wiese USA, Inc. ("Defendant"). Plaintiff alleges the following upon information and belief and based on the investigation of counsel, except as to those allegations that specifically pertain to Plaintiff, which are alleged upon personal knowledge.

## INTRODUCTION

1.      Plaintiff and the proposed Class Members bring this class action lawsuit on behalf of all persons who entrusted Defendant with sensitive personally identifiable information ("PII[1]" or "Private Information") that was impacted in a cyber incident that occurred in or around June 2026 (the "Data Breach" or the "Breach").

---

[1] Personally identifiable information generally incorporates information that can be used to distinguish or trace an individual's identity, either alone or when combined with other personal or identifying information. 2 C.F.R. § 200.79. At a minimum, it includes all information that on its face expressly identifies an individual.

2.      Plaintiff's claims arise from Defendant's failure to properly secure and safeguard Private Information that was entrusted to it, and its accompanying responsibility to store and transfer that information.

3.      Defendant is a large material handling equipment dealer and industrial services company that helps warehouses, distribution centers, manufacturers, retailers, and logistics companies move, store, and manage materials efficiently.[2] Defendant operates service locations in 16 different states: Alabama, Arkansas, Colorado, Hawaii, Illinois, Indiana, Kansas, Maryland, Minnesota, Mississippi, Missouri, New Jersey, Pennsylvania, Tennessee, Utah, and Wisconsin.[3]

4.      Defendant had numerous statutory, regulatory, contractual, and common law duties and obligations, including those based on its affirmative representations to Plaintiff and Class Members to keep their Private Information confidential, safe, secure, and protected from unauthorized disclosure or access.

5.      In or around June 2026, Defendant experienced a Data Breach in which an unauthorized third-party gained access to its IT Network and exfiltrated files containing sensitive Private Information.

6.      Since the Data Breach occurred, the notorious ransomware gang "Termite" has claimed responsibility for the Data Breach, alleging it successfully stole sensitive data from Defendant's IT Network in a June 8, 2026 dark web blog post.[4]

7.      To date, Defendant has yet to issue any public disclosure about the Data Breach.

---

[2] https://wieseusa.com/ (last visited July 15, 2026).
[3] https://wieseusa.com/locations/ (last visited July 15, 2026).
[4] https://www.hookphish.com/blog/ransomware-group-termite-hits-wiese-usa/ (last visited July 15, 2026); see also https://www.dexpose.io/termite-strikes-material-handling-leader-wiese-usa/ (last visited July 15, 2026).

8. Defendant failed to take precautions designed to keep individuals' Private Information secure.

9. Defendant owed Plaintiff and Class Members a duty to take all reasonable and necessary measures to keep the Private Information collected safe and secure from unauthorized access. Defendant solicited, collected, used, and derived a benefit from their Private Information, yet breached its duty by failing to implement or maintain adequate security practices.

10. The sensitive nature of the data maintained by Defendant and potentially compromised in the Data Breach, signifies that Plaintiff and Class Members have suffered irreparable harm. Plaintiff and Class Members have lost the ability to control their Private Information and are subject to an increased risk of identity theft.

11. Defendant, despite having the financial wherewithal and personnel necessary to prevent the Data Breach, nevertheless failed to use reasonable security procedures and practice appropriate to the nature of the sensitive, unencrypted information it maintained for Plaintiff and Class Members, causing the exposure of Plaintiff's and Class Members' Private Information.

12. As a result of Defendant's inadequate digital security and notice process, Plaintiff's and Class Members' Private Information was exposed to criminals. Plaintiff and the Class Members have suffered and will continue to suffer injuries including: financial losses caused by misuse of their Private Information; the loss or diminished value of their Private Information as a result of the Data Breach; lost time associated with detecting and preventing identity theft; and theft of personal and financial information.

13. Upon information and belief, Plaintiff's Private Information is available on the dark web as a result of the Data Breach.

14. Plaintiff brings this action on behalf of all persons whose Private Information was compromised as a result of Defendant's failure to: (i) adequately protect the Private Information of Plaintiff and Class Members; (ii) warn Plaintiff and Class Members of Defendant's inadequate information security practices; (iii) effectively secure hardware containing protected Private Information using reasonable and adequate security procedures free of vulnerabilities and incidents; and (iv) timely notify Plaintiff and Class Members of the Data Breach. Defendant's conduct amounts to at least negligence and violates federal and state statutes.

15. Plaintiff brings this action against Defendant for: negligence, negligence *per se*, unjust enrichment, and breach of implied contract.

16. Plaintiff seeks to remedy these harms and prevent any future data compromise on behalf of himself, and all similarly situated persons whose personal data was compromised and stolen as a result of the Data Breach and who remain at risk due to Defendant's inadequate data security practices.

## PARTIES

### *Plaintiff*

17. Plaintiff is a citizen and resident of East Carondelet, Illinois.

### *Defendant*

18. Defendant is a Missouri corporation maintaining its principal place of business at 1435 Woodson Rd., Saint Louis, Missouri 63132. Defendant's registered agent is C T Corporation System located at 5661 Telegraph Rd, Ste. 4B, Saint Louis, Missouri 63129.

## JURISDICTION AND VENUE

19. This Court has subject-matter jurisdiction pursuant to the Class Action Fairness Act, 28 U.S.C. § 1332(d) because (1) the matter in controversy exceeds the sum or value of

$5,000,000, exclusive of interest and costs, (2) the action is a class action, (3) numerous Class Members are diverse from Defendant, including Plaintiff, and (4) there are more than 100 Class Members.

20.     The Court has general personal jurisdiction over Defendant because Defendant has its principal place of business in this District.

21.     Venue is proper in this District pursuant to 28 U.S.C. § 1391(b)(1) because Defendant's principal place of business is in this District, and much of the conduct alleged in this complaint is believed to have occurred in this District.

## FACTUAL ALLEGATIONS

### A. Background on Defendant

22.     Defendant is a large material handling equipment dealer and industrial services company that helps warehouses, distribution centers, manufacturers, retailers, and logistics companies move, store, and manage materials efficiently.[5]

23.     Upon information and belief, Defendant made promises and representations to its individuals, including Plaintiff and Class Members, that the Private Information collected from them would be kept safe and confidential.

24.     Plaintiff and Class Members provided their Private Information to Defendant, either directly or indirectly, with the reasonable expectation and on the mutual understanding that Defendant would comply with its obligations to keep such information confidential and secure from unauthorized access. But for Defendant's collection of Plaintiff's and Class Members' Private Information, Defendant could not provide its services.

---

[5] https://wieseusa.com/ (last visited July 15, 2026).

25.    As a result of collecting and storing the Private Information of Plaintiff and Class Members for its own financial benefit, Defendant had a continuous duty to adopt and employ reasonable measures to protect Plaintiff's and the Class Members' Private Information from disclosure to third parties.

### B. The Data Breach

26.    In or around June 2026, Defendant experienced a Data Breach in which an unauthorized third-party gained access to its IT Network and exfiltrated files containing sensitive Private Information.

27.    Since the Data Breach occurred, the notorious ransomware gang "Termite" has claimed responsibility for the Data Breach, alleging it successfully stole sensitive data from Defendant's IT Network in a June 8, 2026 dark web blog post.[6]

28.    Termite is a dangerous ransomware gang that "exfiltrate[s] sensitive data while encrypting files, threatening to leak stolen information on public sites if the ransom isn't paid. They disable backups and defenses, ensuring victims cannot easily recover data. Communication is handled through ransom notes, encrypted channels, and TOR websites, with demands for cryptocurrency payments."[7]

29.    To date, Defendant has yet to issue any public disclosure about the Data Breach.

30.    Plaintiff's claims arise from Defendant's failure to safeguard Private Information provided by and belonging to individuals and failure to provide timely notice of the Data Breach.

---

[6] https://www.hookphish.com/blog/ransomware-group-termite-hits-wiese-usa/ (last visited July 15, 2026); see also https://www.dexpose.io/termite-strikes-material-handling-leader-wiese-usa/ (last visited July 15, 2026).

[7] https://www.broadcom.com/support/security-center/protection-bulletin/termite-ransomware (last visited July 15, 2026).

31.     Defendant failed to take precautions designed to keep individuals' Private Information secure.

32.     Individuals affected by the Data Breach are, and remain, at risk that their data will be sold or listed on the dark web and, ultimately, illegally used in the future.

C.  **Defendant's Failure to Prevent, Identify, and Timely Report the Data Breach**

33.     Defendant failed to take adequate measures to protect the Private Information against unauthorized access and exfiltration.

34.     The Private Information that Defendant allowed to be exposed in the Data Breach is the type of private information that Defendant knew or should have known would be the target of cyberattacks.

35.     Despite its own knowledge of the inherent risks of cyberattacks, and notwithstanding the FTC's data security principles and practices,[8] Defendant failed to disclose that its systems and security practices were inadequate to protect individuals' Private Information.

36.     The FTC directs businesses to use an intrusion detection system to expose a breach as soon as it occurs, monitor activity for attempted hacks, and have an immediate response plan if a breach occurs.[9] Immediate notification of a Data Breach is critical so that those impacted can take measures to protect themselves. To date, Defendant has yet to issue a public disclosure about the Data Breach.

---

[8] *Protecting Personal Information: A Guide for Business,* FED. TRADE COMM'N (Oct. 2016)*,* https://www.ftc.gov/business-guidance/resources/protecting-personal-information-guide-business. (last visited July 15, 2026).
[9] *Id.*

**D.  The Data Breach Was Foreseeable, and the Defendant Was Aware of Its Risk**

37.     It is well known that Private Information is an invaluable commodity and a frequent target of hackers.

38.     In 2023, a record 3,205 data breaches occurred in the United States, resulting in about 349,221,481 sensitive records being exposed, a greater than 100% increase from 2019.[10] These statistics have held steady for 2024 – when 3,158 data compromises occurred.[11]

39.     Individuals place a high value not only on their Private Information but also on the privacy of that data. For the individual, identity theft causes significant negative financial impact on victims as well as severe distress and other strong emotions and physical reactions.

40.     In light of recent high-profile data breaches at other industry-leading companies, including LoanDepot (16.9 million affected, January 2024), Evolve Bank & Trust (7.6 million affected, May 2024), Financial Business and Consumer Solutions (4.2 million affected, February 2024), and Prudential Financial (2.5 million affected, February 2024), and in light of the highly-publicized data breaches other companies have suffered as recently as 2024, Defendant knew or should have known that its electronic records would be targeted by cybercriminals.

41.     Indeed, cyberattacks have become so notorious that the FBI and U.S. Secret Service have issued a warning to potential targets, so they are aware of and take appropriate measures to prepare for and are able to thwart such an attack.

42.     Despite the prevalence of public announcements of data breach and data security compromises, and despite its own acknowledgment of its duties to keep Private Information private and secure, Defendant failed to take appropriate steps to protect the Private Information of Plaintiff

---

[10] ITRC (Identity Theft Resource Center), *2023 Data Breach Report* (January 2024), *available at* https://www.idtheftcenter.org/publication/2023-data-breach-report/
[11] https://www.idtheftcenter.org/publication/2024-data-breach-report/ (last visited July 15, 2026).

8

and the proposed Class from being compromised.

### E. Data Breaches are Preventable

43.     Data breaches are preventable.[12] As Lucy Thompson wrote in the Data Breach and Encryption Handbook, "In almost all cases, the data breaches that occurred could have been prevented by proper planning and the correct design and implementation of appropriate security solutions."[13] She added that "[o]rganizations that collect, use, store, and share sensitive personal data must accept responsibility for protecting the information and ensuring that it is not compromised . . . ."[14]

44.     Defendant did not use reasonable security procedures and practices appropriate to the nature of the sensitive information it was maintaining for Plaintiff and Class Members, causing the exposure of Private Information, such as encrypting the information or deleting it when it is no longer needed.

45.     Defendant could have prevented this Data Breach by, among other things, properly encrypting or otherwise protecting its equipment and computer files containing Private Information.

46.     To prevent and detect cyber-attacks and/or ransomware attacks, Defendant could and should have implemented, as recommended by the United States Government, the following measures:

- Implement an awareness and training program. Because end users are targets, employees and individuals should be aware of the threat of ransomware and how it is delivered.

---

[12] Lucy L. Thomson, "Despite the Alarming Trends, Data Breaches Are Preventable," *in* DATA BREACH AND ENCRYPTION HANDBOOK (Lucy Thompson, ed., 2012).
[13] *Id.* at 17.
[14] *Id.* at 28.

9

- Enable strong spam filters to prevent phishing emails from reaching the end users and authenticate inbound email using technologies like Sender Policy Framework (SPF), Domain Message Authentication Reporting and Conformance (DMARC), and DomainKeys Identified Mail (DKIM) to prevent email spoofing.

- Scan all incoming and outgoing emails to detect threats and filter executable files from reaching end users.

- Configure firewalls to block access to known malicious IP addresses.

- Patch operating systems, software, and firmware on devices. Consider using a centralized patch management system.

- Set anti-virus and anti-malware programs to conduct regular scans automatically.

- Manage the use of privileged accounts based on the principle of least privilege: no users should be assigned administrative access unless absolutely needed; and those with a need for administrator accounts should only use them when necessary.

- Configure access controls—including file, directory, and network share permissions—with least privilege in mind. If a user only needs to read specific files, the user should not have write access to those files, directories, or shares.

- Disable macro scripts from office files transmitted via email. Consider using Office Viewer software to open Microsoft Office files transmitted via email instead of full office suite applications.

- Implement Software Restriction Policies (SRP) or other controls to prevent programs from executing from common ransomware locations, such as temporary folders supporting popular Internet browsers or compression/decompression programs, including the AppData/LocalAppData folder.

- Consider disabling Remote Desktop protocol (RDP) if it is not being used.

- Use application whitelisting, which only allows systems to execute programs known and permitted by security policy.

- Execute operating system environments or specific programs in a virtualized environment.

- Categorize data based on organizational value and implement physical and logical separation of networks and data for different organizational units.[15]

47. To prevent and detect cyber-attacks or ransomware attacks, Defendant could and should have implemented, as recommended by the Microsoft Threat Protection Intelligence Team, the following measures:

**Secure internet-facing assets**

- Apply latest security updates

- Use threat and vulnerability management

- Perform regular audit; remove privileged credentials;

**Thoroughly investigate and remediate alerts**

- Prioritize and treat commodity malware infections as potential full compromise;

**Include IT Pros in security discussions**

- Ensure collaboration among [security operations], [security admins], and [information technology] admins to configure servers and other endpoints securely;

**Build credential hygiene**

- Use [multifactor authentication] or [network level authentication] and use strong, randomized, just-in-time local admin passwords;

**Apply principle of least-privilege**

- Monitor for adversarial activities

- Hunt for brute force attempts

- Monitor for cleanup of Event Logs

- Analyze logon events;

**Harden infrastructure**

---

[15] *Id.* at 3-4.

- Use Windows Defender Firewall

- Enable tamper protection

- Enable cloud-delivered protection

- Turn on attack surface reduction rules and [Antimalware Scan Interface] for Office[Visual Basic for Applications].[16]

48. Given that Defendant was storing the Private Information of Plaintiff and Class Members, Defendant could and should have implemented all of the above measures to prevent and detect cyberattacks.

49. The occurrence of the Data Breach indicates that Defendant failed to adequately implement one or more of the above measures to prevent cyberattacks, resulting in the Data Breach and the exposure of the Private Information of Plaintiff and Class Members.

**F. Defendant Knew of the Risk of a Cyberattack because Companies in Possession of Private Information are Particularly Susceptible.**

50. Defendant's negligence, including its gross negligence, in failing to safeguard Plaintiff's and Class Members' Private Information is exacerbated by the repeated warnings and alerts directed to protecting and securing sensitive data.

51. Private Information of the kind accessed in the Data Breach is of great value to cybercriminals as it can be used for a variety of unlawful and nefarious purposes, including ransomware, fraudulent misuse, and sale on the internet black market known as the dark web.

52. Private Information can also be used to distinguish, identify, or trace an individual's identity, such as his or her name, Social Security number, and financial records. This may be

---

[16] *See* Human-operated ransomware attacks: A preventable disaster (Mar 5, 2020), *available at:* https://www.microsoft.com/security/blog/2020/03/05/human-operated-ransomware-attacks-a-preventable-disaster/

accomplished alone, or in combination with other personal or identifying information connected or linked to an individual such as his or her birthdate, birthplace, and mother's maiden name.

53.     Data thieves regularly target entities that store Private Information like Defendant due to the highly sensitive information they maintain. Defendant knew and understood that Plaintiff's and Class Members' Private Information is valuable and highly sought after by criminal parties who seek to illegally monetize it through unauthorized access.

54.     Cyberattacks against companies similar to Defendant are targeted and frequent. According to Contrast Security's 2023 report, "Cyber Bank Heists: Threats to the financial sector," "[o]ver the past year, attacks have included banking trojans, ransomware, account takeover, theft of client data and cybercrime cartels deploying 'trojanized' finance apps to deliver malware in spear-phishing campaigns."[17]

55.     According to the Identity Theft Resource Center's report covering the year 2021, "the overall number of data compromises (1,862) is up more than 68 percent compared to 2020. The new record number of data compromises is 23 percent over the previous all-time high (1,506) set in 2017. The number of data events that involved sensitive information (Ex: Social Security numbers) increased slightly compared to 2020 (83 percent vs. 80 percent)."[18]

56.     The increase in such attacks, and attendant risk of future attacks, was widely known to the public and to anyone in Defendant's industry, including Defendant itself.

---

[17] Tom Kellermann, *Cyber Bank Heists: Threats to the financial sector*, at 5, CONTRAST SECURITY https://www.contrastsecurity.com/hubfs/Cyber%20Bank%20Heists%20Report%2020 23.pdf (last visited July 15, 2026).

[18] *See* Identity Theft Res. Ctr., *2021 Annual Data Breach Report Sets New Record for Number of Compromises*, ITRC (Jan.   24,   2022),  https://www.idtheftcenter.org/post/identity-theft-resource-center-2021-annual-data-breach-report-sets-new-record-for-number-of-compromises.

57.     Defendant knew or should have known of the inherent risks in collecting and storing Private Information and the critical importance of providing adequate security for it.

58.     As a company in possession of Private Information, Defendant knew, or should have known, the importance of safeguarding the Private Information entrusted to it by Plaintiff and Class Members and of the foreseeable consequences if its network systems were breached. Such consequences include the significant costs imposed on Plaintiff and Class Members due to a breach. Nevertheless, Defendant failed to implement or follow reasonable cybersecurity measures to protect against the Data Breach.

59.     Despite the prevalence of public announcements of data breach and data security compromises, Defendant failed to take appropriate steps to protect the Private Information of Plaintiff and Class Members from being compromised.

60.     Defendant was, or should have been, fully aware of the unique type and the significant volume of Private Information on its server, and, thus, the thousands of individuals who would be harmed by the unauthorized exposure of that unencrypted data.

61.     Given the nature of the Data Breach, it was foreseeable that Plaintiff's and Class Members' Private Information compromised therein would be targeted by hackers and cybercriminals for use in a variety of different injurious ways. Indeed, the cybercriminals who possess Plaintiff's and Class Members' Private Information can easily obtain their tax returns or open fraudulent credit card accounts in Plaintiff's and Class Members' names.

62.     Plaintiff and Class Members were the foreseeable and probable victims of Defendant's inadequate security practices and procedures. The breadth of data compromised in the Data Breach makes the information particularly valuable to thieves and leaves Plaintiff and Class Members especially vulnerable to identity theft, financial fraud, and the like.

### G. **Defendant Was Required, But Failed, to Comply with FTC Rules and Guidance.**

63.    The FTC has promulgated numerous guides for businesses that highlight the importance of implementing reasonable data security practices. According to the FTC, the need for data security should be factored into all business decision-making.

64.    In 2016, the FTC updated its publication, *Protecting Personal Information: A Guide for Business*, which establishes cyber-security guidelines for businesses like Defendant. These guidelines note that businesses should protect the personal customer information that they keep; properly dispose of personal information that is no longer needed; encrypt information stored on computer networks; understand their network's vulnerabilities; and implement policies to correct any security problems.

65.    The FTC's guidelines also recommend that businesses use an intrusion detection system to expose a breach as soon as it occurs; monitor all incoming traffic for activity indicating someone is attempting to hack the system; watch for large amounts of data being transmitted from the system; and have a response plan ready in the event of a breach.

66.    The FTC further recommends that companies not maintain Private Information longer than is needed for authorization of a transaction; limit access to sensitive data; require complex passwords to be used on networks; use industry-tested methods for security; monitor for suspicious activity on the network; and verify that third-party service providers have implemented reasonable security measures.

67.    The FTC has brought enforcement actions against businesses for failing to adequately and reasonably protect third parties' confidential data, treating the failure to employ reasonable and appropriate measures to protect against unauthorized access to confidential consumer data as an unfair act or practice prohibited by Section 5 of the FTC Act. Orders resulting

from these actions further clarify the measures businesses like Defendant must undertake to meet their data security obligations.

68.    Such FTC enforcement actions include actions against businesses that fail to use adequate data security practices, like Defendant. *See, e.g.*, *In the Matter of LabMD, Inc.*, 2016-2 Trade Cas. (CCH) ¶ 79708, 2016 WL 4128215, at *32 (MSNET July 28, 2016) ("[T]he Commission concludes that LabMD's data security practices were unreasonable and constitute an unfair act or practice in violation of Section 5 of the FTC Act.").

69.    Section 5 of the FTC Act, 15 U.S.C. § 45, prohibits "unfair . . . practices in or affecting commerce," including, as interpreted and enforced by the FTC, the unfair act or practice by businesses, such as Defendant, of failing to use reasonable measures to protect Private Information. The FTC publications and orders described above also form part of the basis of Defendant's duties in this regard.

70.    The FTC has also recognized that consumer data is a new and valuable form of currency. In an FTC roundtable presentation, former Commissioner Pamela Jones Harbour stated that "most consumers cannot begin to comprehend the types and amount of information collected by businesses, or why their information may be commercially valuable. Data is currency. The larger the data set, the greater potential for analysis and profit."

71.    Defendant failed to properly implement basic data security practices, in violation of its duties under the FTC Act.

72.    Defendant's failures to employ reasonable and appropriate means to protect against unauthorized access to Plaintiff's and Class Members' Private Information or to comply with applicable industry standards constitutes an unfair act or practice prohibited by the FTC Act.

**H.** **Defendant Failed to Comply with Industry Standards.**

73. A number of published industry and national best practices are widely used as a go-to resource when developing an institution's cybersecurity standards.

74. The Center for Internet Security's (CIS) Critical Security Controls (CSC) recommends certain best practices to adequately secure data and prevent cybersecurity attacks, including Critical Security Controls of Inventory and Control of Enterprise Assets, Inventory and Control of Software Assets, Data Protection, Secure Configuration of Enterprise Assets and Software, Account Management, Access Control Management, Continuous Vulnerability Management, Audit Log Management, Email and Web Browser Protections, Malware Defenses, Data Recovery, Network Infrastructure Management, Network Monitoring and Defense, Security Awareness and Skills Training, Service Provider Management, Application Software Security, Incident Response Management, and Penetration Testing.

75. The National Institute of Standards and Technology ("NIST") also recommends certain practices to safeguard systems, such as the following:

    a. Control who logs on to your network and uses your computers and other devices.

    b. Use security software to protect data.

    c. Encrypt sensitive data, at rest and in transit.

    d. Conduct regular backups of data.

    e. Update security software regularly, automating those updates if possible.

    f. Have formal policies for safely disposing of electronic files and old devices.

17

g. Train everyone who uses your computers, devices, and network about cybersecurity. You can help employees understand their personal risk in addition to their crucial role in the workplace.

76. Further still, CISA makes specific recommendations to organizations to guard against cybersecurity attacks, including (a) reducing the likelihood of a damaging cyber intrusion by validating that "remote access to the organization's network and privileged or administrative access requires multi-factor authentication, [e]nsur[ing] that software is up to date, prioritizing updates that address known exploited vulnerabilities identified by CISA[,] [c]onfirm[ing] that the organization's IT personnel have disabled all ports and protocols that are not essential for business purposes," and other steps; (b) taking steps to quickly detect a potential intrusion, including "[e]nsur[ing] that cybersecurity/IT personnel are focused on identifying and quickly assessing any unexpected or unusual network behavior [and] [e]nabl[ing] logging in order to better investigate issues or events[;] [c]onfirm[ing] that the organization's entire network is protected by antivirus/antimalware software and that signatures in these tools are updated," and (c) "[e]nsur[ing] that the organization is prepared to respond if an intrusion occurs," and other steps.

77. Upon information and belief, Defendant failed to implement industry-standard cybersecurity measures, including by failing to meet the minimum standards of both the NIST Cybersecurity Framework Version 2.0 (including PR.AA-01, PR.AA-02, PR.AA-03, PR.AA-04, PR.AA-05, PR.AT-01, PR.DS-01, PR.DS-02, PR.DS-10, PR.PS-01, PR.PS-02, PR.PS-05, PR.IR-01, DE.CM-01, DE.CM-03, DE.CM-06, DE.CM-09, and RS.CO-04) and the Center for Internet Security's Critical Security Controls (CIS CSC), which are established frameworks for reasonable cybersecurity readiness, and by failing to comply with other industry standards for protecting Plaintiff's and Class Members' Private Information, resulting in the Data Breach.

**I.** **Defendant Owed Plaintiff and Class Members a Common Law Duty to Safeguard their Private Information.**

78.    In addition to its obligations under federal and state laws, Defendant owed a common law duty to Plaintiff and Class Members to exercise reasonable care in obtaining, retaining, securing, safeguarding, deleting, and protecting the Private Information in its possession from being compromised, lost, stolen, accessed, and misused by unauthorized persons. Defendant's duty owed to Plaintiff and Class Members obligated it to provide reasonable data security, including consistency with industry standards and requirements, and to ensure that the servers, networks, and protocols storing Plaintiff's and Class Members' Private Information adequately protected it.

79.    Defendant owed a duty to Plaintiff and Class Members to create and implement reasonable data security practices and procedures to protect the Private Information entrusted to it.

80.    Defendant owed a duty to Plaintiff and Class Members to implement processes and ensure such processes are followed that would detect a compromise of Private Information in a timely manner.

81.    Defendant owed a duty to Plaintiff and Class Members to act upon data security warnings and alerts in a timely fashion.

82.    Defendant owed a duty to Plaintiff and Class Members to disclose in a timely and accurate manner when and how the Data Breach occurred.

83.    Defendant owed these duties of care to Plaintiff and Class Members because they were foreseeable and probable victims of any inadequate data security practices.

84.    Defendant tortiously failed to take precautions required to safeguard and protect Plaintiff's and Class Members' Private Information from unauthorized disclosure. Defendant's actions and omissions represent a flagrant disregard of Plaintiff's and Class Members' rights.

19

**J.    Plaintiff and Class Members Suffered Common Injuries and Damages.**

85.    Defendant's failure to ensure adequate data security measures for Plaintiff's and Class Members' Private Information directly and proximately caused injuries to Plaintiff and Class Members by the resulting disclosure of their Private Information in the Data Breach.

86.    The ramifications of Defendant's failures to keep secure the Private Information of Plaintiff and Class Members are long lasting and severe. Once Private Information is stolen, fraudulent use of that information and damage to victims may continue for years.

87.    Plaintiff and Class Members are also at a continued risk because their Private Information remains on Defendant's server, which has already been shown to be susceptible to compromise and is subject to further attack so long as Defendant fails to undertake the necessary and appropriate security measures to protect consumers' Private Information in its care.

88.    As a result of Defendant's ineffective and inadequate data security practices, the consequential Data Breach, and the foreseeable outcome of Plaintiff's and Class Members' Private Information ending up in criminals' possession, all Plaintiff and Class Members have suffered and will continue to suffer the following actual injuries and damages, without limitation: (a) invasion of privacy; (b) financial costs incurred mitigating the materialized risk and imminent threat of identity theft; (c) loss of time and loss of productivity incurred mitigating the materialized risk and imminent threat of identity theft; (d) financial costs incurred due to actual identity theft; (e) loss of time incurred due to actual identity theft; (f) deprivation of value of their Private Information; (g) emotional distress including anxiety and stress in dealing with the Data Breach's aftermath; (h) actual identity theft and fraud; and (i) the continued risk to their sensitive Private Information, which remains in Defendant's possession and is subject to further unauthorized disclosures so long as Defendant fails to undertake appropriate and adequate measures to protect it.

***Present and Ongoing Risk of Identity Theft to Plaintiff and Class Members***

89.    Plaintiff and Class Members are at a heightened risk of identity theft for years to come because of the Data Breach.

90.    The link between a data breach and the risk of identity theft is simple and well established. Criminals acquire and steal Private Information to monetize it. Criminals monetize the data by selling the stolen information on the internet black market to other criminals who then utilize the information to commit a variety of identity theft related crimes discussed below.

91.    The dark web is an unindexed layer of the internet that requires special software or authentication to access. Criminals in particular favor the dark web as it offers a degree of anonymity to visitors and website publishers. Unlike the traditional or "surface" web, dark web users need to know the web address of the website they wish to visit in advance. For example, on the surface web, the CIA's web address is cia.gov, but on the dark web the CIA's web address is ciadotgov4sjwlzihbbgxnqg3xiyrg7so2r2o3lt5wz5ypk4sxyjstad.onion. This prevents dark web marketplaces from being easily monitored by authorities or accessed by those not in the know.

92.    A sophisticated black market exists on the dark web where criminals can buy or sell malware, firearms, drugs, and frequently, stolen Private Information like the Private Information at issue here. The digital character of Private Information stolen in data breaches lends itself to dark web transactions because it is immediately transmissible over the internet and the buyer and seller can retain their anonymity. The sale of a firearm or drugs on the other hand requires a physical delivery address. Nefarious actors can readily purchase usernames and passwords for online streaming services, stolen financial information and account login credentials, and Social Security numbers, dates of birth, and medical information.

93.     The unencrypted Private Information of Plaintiff and Class Members will end up for sale on the dark web because that is the *modus operandi* of hackers. In addition, unencrypted and detailed Private Information may fall into the hands of companies that will use it for targeted marketing without the approval of Plaintiff and Class Members. Unauthorized actors can easily access and misuse Plaintiff's and Class Members' Private Information due to the Data Breach.

94.     Additionally, as a result of the Data Breach, Plaintiff and Class Members are at a heightened risk of "social engineering." Social engineering is a form of hacking whereby a data thief uses previously acquired information to manipulate and trick individuals into disclosing additional confidential or personal information through means such as spam phone calls and text messages or phishing emails. Data breaches are often the starting point for these additional targeted attacks on the victims.

95.     One such example of criminals piecing together bits and pieces of compromised Private Information for profit is the development of "Fullz" packages.[19]

96.     With Fullz packages, cyber-criminals can cross-reference two sources of Private Information to marry unregulated data available elsewhere to criminally stolen data with an

---

[19] "Fullz" is fraudster speak for data that includes the victim's information, including but not limited to name, address, credit card information, Social Security number, date of birth, and more. As a rule of thumb, the more information on a victim, the more money that can be made off those credentials. Fullz are usually pricier than standard credit card credentials, commanding up to $100 per record (or more) on the dark web. Fullz can be cashed out (turning credentials into money) in various ways, including performing bank transactions over the phone with the required authentication details in-hand. Even "dead Fullz," which are Fullz credentials associated with credit cards that are no longer valid, can still be used for numerous purposes, including tax refund scams, ordering credit cards on behalf of the victim, or opening a "mule account" (an account that will accept a fraudulent money transfer from a compromised account) without the victim's knowledge. *See*, *e.g.*, Brian Krebs, *Medical Recs. for Sale in Underground Stolen from Texas Life Ins. Firm*, Krebs on Security (Sep. 18, 2014), https://krebsonsecuritv.com/2014/09/medical-records-for-sale-in-underground-stolen-from-texas-life-insurance-firm.

astonishingly complete scope and degree of accuracy to assemble complete dossiers on individuals. In other words, even if certain information such as emails, phone numbers, or credit card numbers may not be included in the Private Information that was exfiltrated in the Data Breach, criminals may still easily create a Fullz package and sell it at a higher price to unscrupulous operators and criminals (such as illegal and scam telemarketers) over and over.

97.     The development of Fullz packages means that stolen Private Information from the Data Breach can easily be used to link and identify it to Plaintiff's and Class Members' phone numbers, email addresses, and other unregulated sources and identifiers. That is exactly what is happening to Plaintiff and Class Members, and it is reasonable for any trier of fact, including this Court or a jury, to find that their stolen Private Information is being misused, and that such misuse is traceable to the Data Breach.

98.     Victims of identity theft suffer from both direct and indirect financial losses. According to a research study published by the Department of Justice,

> A direct financial loss is the monetary amount the offender obtained from misusing the victim's account or personal information, including the estimated value of goods, services, or cash obtained. It includes both out-of-pocket loss and any losses that were reimbursed to the victim. An indirect loss includes any other monetary cost caused by the identity theft, such as legal fees, bounced checks, and other miscellaneous expenses that are not reimbursed (e.g., postage, phone calls, or notary fees). All indirect losses are included in the calculation of out-of-pocket loss.[20]

99.     According to the FBI's Internet Crime Complaint Center (IC3) 2019 Internet Crime Report, Internet-enabled crimes reached their highest number of complaints and dollar losses that year, resulting in more than $3.5 billion in losses to individuals and business victims.

---

[20] Erika Harrell, *Bureau of Just. Stat.*, U.S. DEP'T OF JUST., NCJ 256085, *Victims of Identity Theft*, 2018 I (2020) https://bjs.ojp.gov/content/pub/pdf/vit18.pdf.

100.     Victims of identity theft also often suffer embarrassment, blackmail, or harassment in person or online, and/or experience financial losses resulting from fraudulently opened accounts or misuse of existing accounts.

101.     In addition to out-of-pocket expenses that can exceed thousands of dollars and the emotional toll identity theft can take, some victims must spend a considerable time repairing the damage caused by the theft of their Private Information. Victims of new account identity theft will likely have to spend time correcting fraudulent information in their credit reports and continuously monitor their reports for future inaccuracies, close existing bank/credit accounts, open new ones, and dispute charges with creditors.

102.     Further complicating the issues faced by victims of identity theft, data thieves may wait years before attempting to use the stolen Private Information. To protect themselves, Plaintiff and Class Members will need to remain vigilant for years or even decades to come.

### *Loss of Time to Mitigate the Risk of Identity Theft and Fraud*

103.     As a result of the recognized risk of identity theft, when a data breach occurs, and an individual is notified by a company that their Private Information was compromised, as in this Data Breach, the reasonable person is expected to take steps and spend time to address the dangerous situation, learn about the breach, and otherwise mitigate the risk of becoming a victim of identity theft or fraud. Failure to spend time taking steps to review accounts or credit reports could expose the individual to greater financial harm—yet the asset of time has been lost.

104.     In the event that Plaintiff and Class Members experience actual identity theft and fraud, the United States Government Accountability Office released a report in 2007 regarding

data breaches in which it noted that victims of identity theft will face "substantial costs and time to repair the damage to their good name and credit record."[21]

105.    Thus, due to the actual and imminent risk of identity theft, Plaintiff and Class Members must monitor their financial accounts for many years to mitigate that harm.

106.    Plaintiff and Class Members have spent time, and will spend additional time in the future, on a variety of prudent actions, such as placing freezes and alerts with credit reporting agencies, contacting financial institutions, closing or modifying financial accounts, changing passwords, reviewing and monitoring credit reports and accounts for unauthorized activity, and filing police reports, which may take years to discover.

107.    These efforts are consistent with the steps that the FTC recommends data breach victims take to protect their personal and financial information after a data breach, including: contacting one of the credit bureaus to place a fraud alert (consider an extended fraud alert that lasts for seven years if someone steals their identity), reviewing their credit reports, contacting companies to remove fraudulent charges from their accounts, placing a credit freeze on their credit, and correcting their credit reports.

108.    Once Private Information is exposed, there is virtually no way to ensure that the exposed information has been fully recovered or contained against future misuse. For this reason, Plaintiff and Class Members will need to maintain these heightened measures for years, and possibly their entire lives, as a result of Defendant's conduct that caused the Data Breach.

***Diminished Value of Private Information***

---

[21] *See* "Data Breaches Are Frequent, but Evidence of Resulting Identity Theft Is Limited; However, the Full Extent Is Unknown," at 2, U.S. GOV'T ACCOUNTABILITY OFFICE, June 2007, https://www.gao.gov/ new.items/d07737.pdf (last visited July 15, 2026) ("GAO Report").

109.    Private Information is a valuable property right. Its value is axiomatic, considering the value of Big Data in corporate America and the consequences of cyber thefts include heavy prison sentences. Even this obvious risk to reward analysis illustrates beyond doubt that Private Information has considerable market value.

110.    For example, drug and medical device manufacturers, pharmacies, hospitals, and other healthcare service providers often purchase Private Information on the black market for the purpose of target-marketing their products and services to the physical maladies of the data breach victims themselves.

111.    Private Information can sell for as much as $363 per record according to the Infosec Institute.

112.    An active and robust legitimate marketplace for Private Information also exists. In 2019, the data brokering industry was worth roughly $200 billion. In fact, the data marketplace is so sophisticated that consumers can actually sell their non-public information directly to a data broker who in turn aggregates the information and provides it to marketers or app developers. Consumers who agree to provide their web browsing history to the Nielsen Corporation can receive up to $50 a year.

113.    As a result of the Data Breach, Plaintiff's and Class Members' Private Information, which has an inherent market value in both legitimate and dark markets, has been damaged and diminished in its value by its unauthorized and likely release onto the dark web, where it holds significant value for the threat actors.

114.    However, this transfer of value occurred without any consideration paid to Plaintiff or Class Members for their property, resulting in an economic loss. Moreover, the Private

26

Information is now readily available, and the rarity of the data has been lost, thereby causing additional loss of value.

***Reasonable and Necessary Future Cost of Credit and Identity Theft Monitoring***

115.    To date, Defendant has done nothing to provide Plaintiff and Class Members with relief for the damages they have suffered due to the Data Breach.

116.    Given the type of targeted attack in this case and sophisticated criminal activity, the type of Private Information, and the *modus operandi* of cybercriminals, there is a strong probability that entire batches of stolen information have been placed, or will be placed, on the black market/dark web for sale and purchase by criminals intending to utilize the Private Information for identity theft crimes—e.g., opening bank accounts in the victims' names to make purchases or to launder money, filing false tax returns, taking out loans or lines of credit, or filing false unemployment claims.

117.    Such fraud may go undetected until debt collection calls commence months or even years later. An individual may not know that his or her Social Security number was used to file for unemployment benefits until law enforcement notifies the individual's employer of the suspected fraud. Fraudulent tax returns are typically discovered only when an individual's authentic tax return is rejected.

118.    Furthermore, the information accessed and disseminated in the Data Breach is significantly more valuable than the loss of, for example, credit card information in a retailer data breach, where victims can easily cancel or close credit and debit card accounts. The information disclosed in this Data Breach is impossible to "close" and difficult, if not impossible, to change (such as Social Security numbers). Consequently, Plaintiff and Class Members are at a present and ongoing risk of fraud and identity theft for many years into the future, if not forever.

119.    The retail cost of credit monitoring and identity theft monitoring can cost $200 or more a year per Class Member. This is a reasonable and necessary cost to protect Class Members from the risk of identity theft that arose from the Data Breach. This is a future cost for a minimum of five years that Plaintiff and Class Members would not need to bear but for Defendant's failure to safeguard their Private Information.

*Loss of Benefit of the Bargain*

120.    Furthermore, Defendant's poor data security deprived Plaintiff and Class Members of the benefit of their bargain.

121.    When agreeing to provide their Private Information, which was a condition precedent to obtaining services from Defendant, and paying Defendant, directly or indirectly, for these products and services, Plaintiff and Class Members as consumers understood and expected that they were, in part, paying a premium for services and data security to protect the Private Information they were required to provide.

122.    In fact, Defendant did not provide the expected data security. Accordingly, Plaintiff and Class Members received services that were of a lesser value than they reasonably expected to receive under the bargains struck with Defendant.

**K.  <u>Plaintiff's Experience</u>**

123.    Plaintiff was an employee of Defendant.

124.    Defendant was in possession of Plaintiff's Private Information before, during, and after the Data Breach. Upon information and belief, Plaintiff is a victim of the Data Breach.

125.    Plaintiff reasonably understood and expected that Defendant would safeguard his Private Information and timely and adequately notify him in the event of a data breach. Plaintiff would not have allowed Defendant, or anyone in Defendant's position, to maintain his Private

Information if he believed that Defendant would fail to implement reasonable and industry standard practices to safeguard that information from unauthorized access.

126.    Plaintiff greatly values his privacy and Private Information and takes reasonable steps to maintain the confidentiality of his Private Information. Plaintiff is very concerned about identity theft and fraud, as well as the consequences of such identity theft and fraud resulting from the Data Breach.

127.    Plaintiff stores any and all documents containing Private Information in a secure location and destroys any documents he receives in the mail that contain any Private Information or that may contain any information that could otherwise be used to compromise his identity and credit card accounts. Moreover, he diligently chooses unique usernames and passwords for his various online accounts.

128.    As a result of the Data Breach, Plaintiff has spent considerable time researching the Data Breach, reviewing his bank accounts, monitoring his credit report, changing his passwords and other necessary mitigation efforts. This is valuable time that Plaintiff spent that he otherwise would have spent on other activities, including but not limited to work and/or recreation.

129.    The Data Breach has caused Plaintiff to suffer fear, anxiety, and stress that his Private Information may be misused.

130.    Plaintiff anticipates spending considerable time and money on an ongoing basis to try to mitigate and address harms caused by the Data Breach. In addition, Plaintiff will continue to be at present and continued increased risk of identity theft and fraud for years to come.

131.    Plaintiff has a continuing interest in ensuring that his Private Information, which upon information and belief, remains in Defendant's possession, is protected and safeguarded from future breaches.

132.    As a direct and traceable result of the Data Breach, Plaintiff suffered actual injury and damages after his Private Information was compromised and stolen in the Data Breach, including, but not limited to: (a) lost time and money related to monitoring his accounts and credit reports for fraudulent activity; (b) loss of privacy due to his Private Information being accessed and stolen by cybercriminals; (c) loss of the benefit of the bargain because Defendant did not adequately protect his Private Information; (d) emotional distress because identity thieves now possess his sensitive information; (e) imminent and impending injury arising from the increased risk of fraud and identity theft now that his Private Information has been stolen and likely published on the dark web; (f) diminution in the value of his Private Information, a form of intangible property that Defendant obtained from Plaintiff; and (g) other economic and non-economic harm.

## CLASS ALLEGATIONS

133.    Pursuant to Federal Rule of Civil Procedure 23, Plaintiff seeks certification of the following class:

> All persons whose Private Information was impacted by the Data Breach (the "Class").

134.    Specifically excluded from the Class are Defendant, its officers, directors, agents, trustees, parents, children, corporations, trusts, representatives, principals, servants, partners, joint venturers, or entities controlled by Defendant, and its heirs, successors, assigns, or other persons or entities related to or affiliated with Defendant and/or its officers and/or directors, the judge assigned to this action, and any member of the judge's immediate family.

30

135.   Plaintiff reserves the right to amend the Class definitions above if further investigation and/or discovery reveals that the Class should be expanded, narrowed, divided into subclasses, or otherwise modified in any way.

136.   This action may be certified as a class action because it satisfies the numerosity, commonality, typicality, adequacy, and superiority requirements therein.

137.   Numerosity: The Class is so numerous that joinder of all Class Members is impracticable. Although the precise number of such persons is unknown, and the facts are presently within the sole knowledge of Defendant, upon information and belief, Plaintiff estimates that the Class is comprised of thousands of Class Members.

138.   Typicality of Claims: Plaintiff's claims are typical of those of other Class Members because Plaintiff, like the unnamed Class, had his Private Information compromised as a result of the Data Breach. Plaintiff is a member of the Class, and his claims are typical of the claims of the members of the Class. The harm suffered by Plaintiff is similar to that suffered by all other Class Members which was caused by the same misconduct by Defendant.

139.   Adequacy of Representation: Plaintiff will fairly and adequately represent and protect the interests of the Class. Plaintiff has no interests antagonistic to, nor in conflict with, the Class. Plaintiff has retained competent counsel who are experienced in consumer and commercial class action litigation and who will prosecute this action vigorously.

140.   Superiority: A class action is superior to other available methods for the fair and efficient adjudication of this controversy. Because the monetary damages suffered by individual Class Members are relatively small, the expense and burden of individual litigation make it impossible for individual Class Members to seek redress for the wrongful conduct asserted herein. If Class treatment of these claims is not available, Defendant will likely continue its wrongful

31

conduct, will unjustly retain improperly obtained revenues, or will otherwise escape liability for its wrongdoing as asserted herein.

141.    <u>Predominant Common Questions</u>: The claims of all Class Members present common questions of law or fact, which predominate over any questions affecting only individual Class Members, including:

a.  Whether Defendant failed to implement and maintain reasonable security procedures and practices appropriate to the nature and scope of the information compromised in the Data Breach;

b.  Whether Defendant's data security systems prior to and during the Data Breach complied with applicable data security laws and regulations;

c.  Whether Defendant's storage of Plaintiff's and Class Members' Private Information was done in a negligent manner;

d.  Whether Defendant had a duty to protect and safeguard Plaintiff's and Class Members' Private Information;

e.  Whether Defendant's conduct was negligent;

f.  Whether Defendant's conduct violated Plaintiff's and Class Members' privacy;

g.  Whether Defendant's conduct violated the statutes as set forth herein;

h.  Whether Defendant took sufficient steps to secure individuals' Private Information;

i.  Whether Defendant was unjustly enriched; and

j.  The nature of relief, including damages and equitable relief, to which Plaintiff and Class Members are entitled.

142. Information concerning Defendant's policies is available from Defendant's records.

143. Plaintiff knows of no difficulty which will be encountered in the management of this litigation which would preclude its maintenance as a class action.

144. The prosecution of separate actions by individual members of the Class would run the risk of inconsistent or varying adjudications and establish incompatible standards of conduct for Defendant. Prosecution as a class action will eliminate the possibility of repetitious and inefficient litigation.

145. Given that Defendant has not indicated any changes to its conduct or security measures, monetary damages are insufficient and there is no complete and adequate remedy at law.

## CAUSES OF ACTION

### COUNT I
### NEGLIGENCE
### (On Behalf of Plaintiff and the Class)

146. Plaintiff incorporates by reference and re-alleges each and every allegation set forth above in paragraphs 1 through 145, as though fully set forth herein.

147. Plaintiff brings this claim individually and on behalf of the Class Members.

148. Defendant knowingly collected, came into possession of, and maintained Plaintiff's and Class Members' Private Information, and had a duty to exercise reasonable care in safeguarding, securing, and protecting such information from being compromised, lost, stolen, misused, and/or disclosed to unauthorized parties.

149. Defendant had a duty to have procedures in place to detect and prevent the loss or unauthorized dissemination of Plaintiff's and Class Members' Private Information.

33

150.    Defendant had, and continues to have, a duty to timely disclose that Plaintiff's and Class Members' Private Information within its possession was compromised and precisely the types of information that were compromised.

151.    Defendant owed a duty of care to Plaintiff and Class Members to provide data security consistent with industry standards, applicable standards of care from statutory authority like Section 5 of the FTC Act, and other requirements discussed herein, and to ensure that its systems and networks, and the personnel responsible for them, adequately protected individuals' Private Information.

152.    Defendant's duty of care to use reasonable security measures arose as a result of the special relationship that existed between Defendant and Plaintiff and Class Members. Defendant was in a position to ensure that its systems were sufficient to protect against the foreseeable risk of harm to Plaintiff and Class Members from a data breach.

153.    Defendant's duty to use reasonable care in protecting confidential data arose not only as a result of the statutes and regulations described above, but also because Defendant is bound by industry standards to protect confidential Private Information.

154.    Defendant breached these duties by failing to exercise reasonable care in safeguarding and protecting Plaintiff's and Class Members' Private Information.

155.    The specific negligent acts and omissions committed by Defendant include, but are not limited to, the following:

      a.  Failing to adopt, implement, and maintain adequate security measures to safeguard Plaintiff's and Class Members' Private Information;

      b.  Failing to adequately monitor the security of its networks and systems; and

      c.  Failing to periodically ensure that its computer systems and networks had plans in place to maintain reasonable data security safeguards.

156.   Defendant, through its actions and/or omissions, unlawfully breached its duties to Plaintiff and Class Members by failing to exercise reasonable care in protecting and safeguarding Plaintiff's and Class Members' Private Information within Defendant's possession.

157.   Defendant, through its actions and/or omissions, unlawfully breached its duties to Plaintiff and Class Members by failing to have appropriate procedures in place to detect and prevent dissemination of Plaintiff's and Class Members' Private Information.

158.   Defendant, through its actions and/or omissions, unlawfully breached its duty to timely disclose to Plaintiff and Class Members that the Private Information within Defendant's possession might have been compromised and precisely the type of information compromised.

159.   Defendant breached the duties set forth in 15 U.S.C. § 45, the FTC guidelines, the National Institute of Standards and Technology's Framework for Improving Critical Infrastructure Cybersecurity, and other industry guidelines. In violation of 15 U.S.C. § 45, Defendant failed to implement proper data security procedures to adequately and reasonably protect Plaintiff's and Class Members' Private Information. In violation of the FTC guidelines, *inter alia,* Defendant did not protect the Private Information it keeps; failed to properly dispose of personal information that was no longer needed; failed to encrypt information stored on computer networks; lacked the requisite understanding of its networks' vulnerabilities; and failed to implement policies to correct security issues.

160.   It was foreseeable that Defendant's failure to use reasonable measures to protect Plaintiff's and Class Members' Private Information would result in injury to Plaintiff and Class Members. Further, the breach of security was reasonably foreseeable given the known high frequency of cyberattacks and data breaches.

161. It was foreseeable that the failure to adequately safeguard Plaintiff's and Class Members' Private Information would result in injuries to Plaintiff and Class Members.

162. Defendant's breach of duties owed to Plaintiff and Class Members caused Plaintiff's and Class Members' Private Information to be compromised.

163. But for Defendant's negligent conduct and breach of the above-described duties owed to Plaintiff and Class Members, their Private Information would not have been compromised.

164. As a result of Defendant's failure to timely notify Plaintiff and Class Members that their Private Information had been compromised, Plaintiff and Class Members are unable to take the necessary precautions to mitigate damages by preventing future fraud.

165. As a result of Defendant's negligence and breach of duties, Plaintiff and Class Members are in danger of imminent harm in that their Private Information, which is still in the possession of third parties, will be used for fraudulent purposes, and Plaintiff and Class Members have and will suffer damages including: a substantial increase in the likelihood of identity theft; the compromise, publication, and theft of their personal information; loss of time and costs associated with the prevention, detection, and recovery from unauthorized use of their personal information; the continued risk to their personal information; future costs in terms of time, effort, and money that will be required to prevent, detect, and repair the impact of the personal information compromised as a result of the Data Breach; and overpayment for the services or products that were received without adequate data security.

## COUNT II
## NEGLIGENCE *PER SE*
### (On Behalf of Plaintiff and the Class)

166. Plaintiff incorporates by reference and re-alleges each and every allegation set forth above in paragraphs 1 through 145, as though fully set forth herein.

167. Section 5 of the FTC Act, 15 U.S.C. 45, prohibits "unfair . . . practices in or affecting commerce" including, as interpreted and enforced by the FTC, the unfair act or practice by Defendant of failing to use reasonable measures to protect Plaintiff's and Class Members' Private Information. Various FTC publications and orders also form the basis of Defendant's duty.

168. Defendant violated Section 5 of the FTC Act (and similar state statutes) by failing to use reasonable measures to protect Plaintiff's and Class Members' Private Information and by failing to comply with industry standards.

169. Defendant's conduct was particularly unreasonable given the nature and amount of Private Information obtained and stored and the foreseeable consequences of a data breach on Defendant's systems.

170. Class Members are consumers within the class of persons Section 5 of the FTC Act (and similar state statutes) were intended to protect.

171. Moreover, the harm that has occurred is the type of harm the FTC Act (and similar state statutes) was intended to guard against. Indeed, the FTC has pursued over fifty enforcement actions against businesses which, as a result of their failure to employ reasonable data security measures and avoid unfair and deceptive practices, caused the same harm suffered by Plaintiff and Class Members.

172.    As a result of Defendant's negligence, Plaintiff and Class Members have been harmed and have suffered damages including, but not limited to: damages arising from identity theft and fraud; out-of-pocket expenses associated with procuring identity protection and restoration services; increased risk of future identity theft and fraud, and the costs associated therewith; and time spent monitoring, addressing, and correcting the current and future consequences of the Data Breach.

**COUNT III**
**UNJUST ENRICHMENT**
**(On Behalf of Plaintiff and the Class)**

173.    Plaintiff incorporates by reference and re-alleges each and every allegation set forth above in paragraphs 1 through 145, as though fully set forth herein.

174.    Plaintiff and Class Members conferred a benefit upon Defendant by providing Defendant with their Private Information.

175.    Defendant appreciated or had knowledge of the benefits conferred upon itself by Plaintiff. Defendant also benefited from the receipt of Plaintiff's and Class Members' Private Information.

176.    Under principles of equity and good conscience, Defendant should not be permitted to retain the full value of Plaintiff's and the Class Members' Private Information because Defendant failed to adequately protect their Private Information. Plaintiff and the proposed Class would not have provided their Private Information to Defendant had they known Defendant would not adequately protect their Private Information.

177.    Defendant should be compelled to disgorge into a common fund for the benefit of Plaintiff and Class Members all unlawful or inequitable proceeds received by it because of its misconduct and the Data Breach it caused.

38

**COUNT IV**
**BREACH OF IMPLIED CONTRACT**
**(On Behalf of Plaintiff and the Class)**

178.    Plaintiff incorporates by reference and re-alleges each and every allegation set forth above in paragraphs 1 through 145, as though fully set forth herein.

179.    Plaintiff and the Class Members entered into implied contracts with Defendant under which Defendant agreed to safeguard and protect their Private Information and to timely and accurately notify Plaintiff and Class Members that their information had been breached and compromised.

180.    Plaintiff and the Class were required to, and delivered, their Private Information to Defendant as part of the process of obtaining employment.

181.    Plaintiff and Class Members conferred a monetary benefit on Defendant in that Plaintiff and Class Members received lesser wages for services rendered to Defendant.

182.    Without the Private Information provided by Plaintiff and Class Members, Defendant could not derive revenue from its regular business activities. A portion of the revenue derived from the services provided to Plaintiff and Class Members was to be used to provide a reasonable level of data security and reasonable data security practices. The amount of revenue to be allocated to data security is known to Defendant.

183.    Defendant accepted possession of Plaintiff's and Class Members' Private Information for the purpose of services and implicitly agreed to protect their Private Information from data breaches and keep it confidential and secured.

184.    The implied promise included consideration beyond those pre-existing general duties owed under state and federal regulations. The additional consideration included implied promises to take adequate steps to comply with specific industry data security standards and FTC guidelines and industry standards on data security.

185.    The implied promises include but are not limited to: (1) taking steps to ensure that any agents who are granted access to Private Information also protect the confidentiality of that data; (2) taking steps to ensure that the Private Information that is placed in the control of its agents is restricted and limited to achieve an authorized purpose; (3) restricting access to qualified and trained agents; (4) designing and implementing appropriate retention policies to protect the Private Information against data breaches; (5) applying or requiring proper encryption; (6) multifactor authentication for access; and (7) other steps to protect against foreseeable data breaches.

186.    Based on this implicit understanding, Plaintiff and Class Members accepted Defendant's offers and provided Defendant with their Private Information to obtain services.

187.    Plaintiff and Class Members would not have permitted their Private Information to be collected and stored by Defendant had they known that Defendant would not safeguard their Private Information, as promised, or provide timely notice of a data breach.

188.    Plaintiff and Class Members fully performed their obligations under their implied contracts with Defendant.

189.    Defendant breached the implied contracts by failing to safeguard Plaintiff's and Class Members' Private Information and by failing to provide them with timely and accurate notice of the Data Breach.

190.    Upon information and belief, Defendant has not provided Plaintiff and the Class with information regarding the root cause of the Data Breach and the steps Defendant is taking to ensure that the Private Information remains safe and protected from further disclosures.

191.    The losses and damages Plaintiff and Class Members sustained (as described above) were the direct and proximate result of Defendant's breach of its implied contracts with Plaintiff and Class Members.

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiff, individually and on behalf of all others similarly situated, seeks judgment against Defendant, as follows:

(a)    For an order determining that this action is properly brought as a class action and certifying Plaintiff as the representative of the Class and his counsel as Class Counsel;

(b)    For an order declaring that Defendant's conduct violates the laws referenced herein;

(c)    For an order finding in favor of Plaintiff and the Class on all counts asserted herein;

(d)    For damages in amounts to be determined by the Court and/or jury;

(e)    For an award of statutory damages or penalties to the extent available;

(f)    For pre-judgment interest on all amounts awarded;

(g)    For an order of restitution and all other forms of monetary relief; and

(h)    Such other and further relief as the Court deems necessary and appropriate.

## JURY TRIAL DEMANDED

Plaintiff demands a trial by jury of all claims in this Class Action Complaint so triable.

Dated: July 16, 2026                                  Respectfully submitted,

By: */s/ Maureen M. Brady*
Maureen M. Brady (MO #57800)
**McSHANE & BRADY**
4006 Central Street
Kansas City, MO 64111
Tel: (816) 888-8010

41

mbrady@mcshanebradylaw.com

Jeff Ostrow (*pro hac vice* forthcoming)
**KOPELOWITZ OSTROW P.A.**
One W Las Olas Blvd, Suite 500
Fort Lauderdale, FL 33306
Tel: (954) 525-4100
ostrow@kolawyers.com

*Counsel for Plaintiff and the Proposed
Class*